# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MONSTER ENERGY COMPANY, a
Delaware corporation,

      Plaintiffs,

v.

MONSTER MOTORCYCLES INC., a
Florida Profit corporation; ANTHONY
J. PROVENZANO, an individual,

      Defendants.

_____/

CASE NO. 3:18-cv-705-J-34JBT

**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**

**DEMAND FOR JURY TRIAL**

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby sues Defendant Monster Motorcycles Inc. ("Monster Motorcycles") and Anthony J. Provenzano ("Provenzano") (collectively, "Defendants"), and alleges as follows:

## I. JURISDICTION AND VENUE

1.    This is an action for 1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), 2) trademark infringement under 15 U.S.C. § 1114, 3) unfair competition arising under Florida Statutes § 501.201 *et seq.*, and 4) Florida common-law unfair competition.

2.    The Court has original subject matter jurisdiction over the claims that relate to trademark infringement, trade dress infringement, and false designation of

SGR/18504852.1

origin pursuant to 15 U.S.C. §§ 1116 and 1121(a) and also pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) at least because Monster Motorcycles operates a business in this Judicial District, Defendant Provenzano resides in this Judicial District and a substantial portion of the events complained of herein took place in this Judicial District.

## II.  THE PARTIES

4.     Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

5.     Defendant Monster Motorcycles Inc. is a corporation organized and existing under the laws of the State of Florida, having a principal place of business at 2 Enterprise Drive Suite C, Bunnell, Florida 32110.

SGR/18504852.1

6.     Defendant Provenzano, an individual, is an officer and owner of Monster Motorcycles Inc. and resides at 2 Pine Brook Drive Palm Coast, FL 32164.

### III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

**A.     Monster's Trademarks and Trade Dress**

7.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages.  Monster has achieved extensive exposure and widespread recognition of its MONSTER™ brand through its sponsorship of motorsports athletes, teams and events, among other sponsorships.

8.     In 2002, long before Defendant's acts described herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous MONSTER™ mark and MONSTER ENERGY® mark.

9.     Monster's successful line of MONSTER™ drinks has grown to include numerous other well-known products, the containers and packaging of which are prominently marked with the MONSTER™ mark.  The MONSTER™ line of drinks includes or has included, but is not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster Assault®; Juice Monster® Khaos®, Juice Monster® Ripper®, and Juice Monster® Pipeline Punch®; Ubermonster®; Monster Energy® Gronk; Monster Energy® Import; Punch Monster® Baller's Blend and Punch Monster® Mad Dog; Monster Energy Absolutely Zero®; Monster Energy Zero Ultra®, Monster Energy Ultra Blue®,

Monster Energy Ultra Red®, Monster Energy Ultra Sunrise®, Monster Energy Ultra Citron®, and Monster Energy Ultra Black®; Monster Rehab®, which is a line of tea-based non-carbonated energy drinks, which includes Monster's Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, Monster Rehab® Tea + Lemonade + Energy, Monster Rehab® Raspberry Tea + Energy, and Monster Rehab® Peach Tea + Energy; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; and 〽️® Monster Energy® which is a five ounce concentrated energy drink, among others (referred to collectively as "MONSTER line of drinks").

10. Representative images showing some of the products in Monster's MONSTER™ line of drinks are shown below:

 

SGR/18504852.1

11.     As illustrated above, Monster also uses its now-famous Claw-Icon Logo, ⅲ®, in connection with its products.

12.     Monster is also the owner of numerous trademark registrations for marks that incorporate its famous MONSTER™ Mark, MONSTER ENERGY® Mark, and/or Claw-Icon Logo ⅲ® for use in connection with beverages, nutritional supplements, clothing, sporting goods, promoting goods and services in the motorsports industry, and other products and services, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 03/12/2014 | 04/14/2015 |
|  | 4,721,432 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual | 03/12/2014 | 04/14/2015 |

5

SGR/18504852.1

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | promotional materials; promoting sports and music events and competitions for others. | | |
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, [ and water; ]*but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not.* | 06/07/2003 | 11/16/2004 |
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies. | 07/28/2010 | 11/08/2011 |
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |

SGR/18504852.1

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/2002 | 02/27/2006 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 4,332,062 | Silicone wrist bands; silicone bracelets; jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |

SGR/18504852.1

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/2007 | 10/11/2011 |

SGR/18504852.1

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/2007 | 10/11/2011 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
|  | 4,865,702 | Nutritional supplements in liquid form;<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 12/08/2015 |

9

13.   Attached hereto as Exhibits A1-A18 are true and correct copies of Monster's trademark registrations identified in Paragraph 12 of this Complaint, which are hereby incorporated by reference.  Collectively, those registrations and trademarks, including all common law rights therein, are referred to as the "MONSTER Marks."

14.   Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 3,044,314, 3,044,315, 3,057,061, 3,134,841, 3,134,842, 3,852,118, 3,959,457, 3,908,600, 3,908,601, 3,914,828, 4,036,680, 4,036,681, 4,051,650 and 4,111,964 are incontestable.

15.   In addition, since 2002, Monster has consistently used a distinctive trade dress for its packaging and promotional materials, including a stylized font for the mark MONSTER on a dark background, a bright contrasting accent color, including bright green, and an overall aggressive, edgy theme, as shown below (the "MONSTER Trade Dress"):



SGR/18504852.1

16.     Long before Defendants' acts described herein, Monster has used or licensed the use of its MONSTER Marks and/or MONSTER Trade Dress in connection with products used in connection with or associated with motorized vehicles and motorsports, such as automotive wheels, replica cars, remote control cars, graphic kits for motorized vehicles, clothing, gloves, stickers, sports helmets, bags, backpacks, and other related accessories.   True and correct examples of authorized products bearing Monster's MONSTER Marks are shown below.



SGR/18504852.1





SGR/18504852.1





SGR/18504852.1

17.    In addition, Monster has used, and continues to use, its MONSTER Marks and/or MONSTER Trade Dress in connection with apparel and accessories, including, for example, t-shirts, hooded shirts, hooded sweatshirts, sweatshirts, jackets, pants, bandanas, sweat bands, gloves, headgear, stickers, and decals.  True and correct examples of authorized apparel bearing Monster's MONSTER Marks and/or MONSTER Trade Dress are shown below.



SGR/18504852.1



SGR/18504852.1

18.     Monster's MONSTER Marks and MONSTER Trade Dress are the subject of substantial and continuous marketing and promotion by Monster.  Since 2002, Monster has spent over $4.6 billion dollars in advertising, promoting, and marketing its MONSTER brand and MONSTER Trade Dress.  In 2017 alone, Monster spent $537 million dollars in advertising, promoting, and marketing its brand, marks, and trade dress.

19.     Monster has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress by displaying the marks and trade dress on billions of cans of its MONSTER drinks sold in the U.S.  Monster's promotional efforts also include – by way of example but not limitation – sponsorship of athletes, athletic teams, athletic competitions, concerts and live events around the world, widespread distribution of promotional and point of sale materials, product samplings, apparel and merchandise bearing the MONSTER Marks and/or MONSTER Trade Dress, promotion in magazines and other industry publications, promotion on the MONSTER ENERGY® website and other Internet websites, and attendance at trade shows.   Virtually every marketing and promotional item uses the colors black and green.

20.     Monster has an established and versatile history in motorsports.  Since 2002, a major part of Monster's brand promotion has focused on racing and motorsports. Indeed, Monster licenses the sale of MONSTER-branded automotive

products like motorcycles and automotive wheels.  And, as far back as 2008, Monster licensed Kawasaki to make and sell MONSTER-branded motorcycles. Some examples of MONSTER-branded Kawasaki motorcycles are shown below:

 

21.    Monster sponsors or has sponsored a wide variety of motorsport athletes, teams, and/or activities, including, but not limited to, NASCAR, Formula 1, MotoGP, Moto2, Supercross, motocross, MXGP, MX2, drag racing, drifting, flat track, off road, rally, rallycross, snowmobile, speedway, stunt, superbike, and freestyle motocross.

22.    On January 1, 2017, Monster became the title sponsor of NASCAR's premier series (formerly called the NASCAR Sprint Cup Series), which is now called the Monster Energy® NASCAR Cup Series.  Monster also became the official energy drink of NASCAR.  NASCAR is the second most watched sport in

SGR/18504852.1

the U.S., with over 5 million fans watching each of the 41 races. Below is the logo

for the Monster Energy® NASCAR Cup Series:



23.    Monster also has sponsored and continues to sponsor numerous

athletes that compete in various classes of NASCAR racing. For example, in 2011,

Monster began its sponsorship of NASCAR driver Kyle Busch, who holds several

records in NASCAR racing and won the prestigious 2015 Sprint Cup Series, the

top racing series of NASCAR. In 2015 Kyle Busch earned his 75th Xfinity Series

win at Kansas Speedway racing for Joe Gibbs Racing in the No. 54 MONSTER

ENERGY® Toyota Camry. In 2012, Monster added sponsorship of Kyle's older

brother, Kurt Busch, who is also a NASCAR driver and winner of the 2010 All-

Star Race and the 2004 Sprint Cup. Monster also sponsors the Stewart Haas

Racing team with its current driver Kurt Busch who drives the #41 Monster

Energy/HAAS Automation Chevy. The drivers' cars and racing gear prominently

display the MONSTER Marks  and MONSTER Trade Dress as shown, for

example, below:

SGR/18504852.1







SGR/18504852.1

24.     Monster also has been a long-time sponsor of Ricky Carmichael who transitioned from one of the world's greatest Supercross and Motocross racers to a NASCAR driver.  Carmichael prominently promotes Monster's MONSTER Marks and MONSTER Trade Dress.   Some examples of Monster's sponsorship of Carmichael are shown below:



25.     Monster also sponsors or has sponsored athletes and teams who compete in other truck and car racing events, including, but not limited to, SCORE Off-Road Racing events, the King of the Hammers desert racing event, and the Off-Road Championship event (TORC).   Monster sponsors or has sponsored the following teams that compete in truck and car racing events: the Mercedes AMG PETRONAS F1 Racing Team (formerly named the Mercedes GP Petronas Formula One Team) that competes in the FIA Formula One World Championship

SGR/18504852.1

Series with its current team drivers 3-time Formula One World Champion, Lewis Hamilton and current Formula One World Champion, Nico Rosberg, the Holden Racing Team, and the MONSTER ENERGY® X-Raid racing team. Together, Lewis Hamilton and Nico Rosberg won 19 of the 21 FIA Formula One races in 2016. In addition, the Monster-sponsored Mercedes AMG PETRONAS F1 Racing Team previously included seven-time World Champion Michael Schumacher before Schumacher's retirement in 2012. Some examples of Monster's sponsorships of athletes and teams who compete or have competed in car and truck racing events are shown below:



SGR/18504852.1



26.   In addition, Monster recently announced a global partnership with Lewis Hamilton, which is separate and in addition to Monster's sponsorship of the Mercedes AMG PETRONAS F1 Racing Team.  As part of the global partnership, Monster and Lewis Hamilton created and released a signature drink together.

27.   Monster also has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress in connection with motorcycle racing events.  For example, Monster sponsors or has sponsored the following motorcycle racing events: MotoGP motorcycle racing events (16-18 around the world per year including 2-3 in the United States), the Outdoor National Motocross Series, the X Games, the MONSTER ENERGY® AMA Supercross Series (as the title sponsor for 16 of the 17 series races each year since 2008), the MONSTER ENERGY® Speedway World Championship, Arenacross events, MX1 and MX2

FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, and the FIM MX Junior World Championship, among others.   Monster also sponsors teams that compete in motorcycle racing events including, for example, the ProCircuit Kawasaki Motocross/Supercross Team, the MONSTER ENERGY® Kawasaki Factory Team, the Yamaha Factory MotoGP Team with its renowned racers Valentino Rossi (nine-time Grand Prix World Champion, with seven championships in the premier class) and Jorge Lorenzo (five-time Grand Prix World Champion, with two championships in the premier class), the MONSTER ENERGY® Yamaha Tech 3 MotoGP Team, the Yamaha MX1 Team, the Yamaha MX2 Team, and Team Babbitt's/Monster Energy/AMSOIL/Kawaski Arenacross team.   Some examples of Monster's sponsorship of these events and teams are shown, for example, below:



SGR/18504852.1






28.     Monster sponsored athletes compete or have competed in Professional Bull Riding, the Kentucky Derby, Ultimate Fighting Championship ("UFC"), and the National Football League.   Specifically, Monster has sponsored Victor Espinoza and American Pharoah, who won the American Triple Crown and the Breeder's Cup Classic in 2015.   Monster also sponsors Rob Gronkowski, a professional football player who plays for the NFL's New England Patriots.   In 2011, Gronkowski set NFL single-season records for touchdowns and receiving yards by a tight end and became the first tight end in NFL history to lead the

24

conference in scoring.   Additionally, Monster sponsors Daniel Cormier, light heavyweight champion in the UFC, Ronda Rousey, former UFC women's bantamweight champion and Connor McGregor, featherweight champion in the UFC.

29.     Monster began sponsoring Tiger Woods in 2016.  Tiger Woods is one of the most successful and famous golfers in the world.   In his storied career, Woods has won fourteen major championships, including the prestigious Masters Tournament, the U.S. Open, The British Open Championship, and the PGA Championship.

30.     When competing, at public appearances, or both, Monster's sponsored athletes and team members almost always wear clothing or use equipment that prominently displays one or more of the MONSTER Marks and/or the MONSTER Trade Dress.  The sponsored athletes and team members are also frequently shown drinking MONSTER™ drinks.   The MONSTER Marks and MONSTER Trade Dress are prominently displayed at the event venues, as well as on the clothing, helmets, and/or bikes, trucks or cars of riders or teams sponsored by Monster. Through Monster's sponsorships, millions of consumers have been exposed to the MONSTER Marks and  MONSTER Trade Dress when they watch the athletes and teams compete at events—many of which are televised nationwide—or see the athletes at public appearances or in Internet postings and magazines.

SGR/18504852.1

31.     In addition to sponsoring professional athletes and teams, since at least 2004, Monster uses the mark MONSTER ARMY™ in connection with an amateur athlete development program.   More than 376,000 amateur athletes in various sports have applied to be accepted as part of the Monster Army through the Monster Army website <www.monsterarmy.com>. Shown below are true and accurate representative pictures illustrating Monster's use of its MONSTER ARMY™ mark.






26

32.     Monster supports members of the MONSTER ARMY™ in many different ways, but such support often includes assistance with clothing, gear, training, and travel.  Members of the MONSTER ARMY™ also typically wear MONSTER™ branded clothing and gear which prominently display one or more of the MONSTER Marks and/or the MONSTER Trade Dress.  Monster also provides athletes with hats, t-shirts, stickers, and/or embroidered patches bearing the MONSTER Marks and the MONSTER Trade Dress.  The athletes will wear or apply these items to their sports equipment and gear in order to promote the MONSTER brand of products during competition.

33.     Monster's MONSTER Marks and MONSTER Trade Dress were also marketed and promoted while prominently displayed on the Las Vegas monorail (the "Monster Train").  In 2003, Monster engaged in a massive advertising campaign in connection with its sponsorship of the Monster Train, which prominently featured the MONSTER Mark and MONSTER Trade Dress.  The Monster Train was featured in *The Wall Street Journal*, *Time* and *USA Today* in 2003, and these articles were read by an estimated 32 million people in the U.S.  In addition, television and internet reports that discussed the Las Vegas Monster Train reached another 70 million readers, and television and radio promotions were circulated to approximately 36 million people in the U.S.

SGR/18504852.1

34.     As a result of the forgoing, the MONSTER Marks have become very well-known and have acquired substantial and valuable goodwill in the United States in association with, *inter alia*, energy drinks and the motorcycle and motorsports industries.

35.     Monster's MONSTER line of drinks has achieved substantial commercial success.  Worldwide retail sales now exceed 3 billion cans per year, with estimated retail sales at approximately $6 billion per year worldwide. Monster's MONSTER™ brand has established itself as the best-selling energy drink brand in the United States by unit volume and dollar value.  While Monster continues to expand its successful MONSTER™ line of drinks, Monster's best-selling drink is still the original Monster Energy®, which prominently features the colors green and black.

36.     As a result of Monster's substantial use and promotion of its MONSTER Marks and MONSTER Trade Dress, the marks and trade dress have acquired great value as specific identifiers of Monster's products and services and serve to identify and distinguish Monster's MONSTER™ products and services from those of others.  Customers in this Judicial District and elsewhere readily recognize Monster's MONSTER Marks and MONSTER Trade Dress as distinctive designations of the origin of Monster's MONSTER™ and MONSTER ENERGY® brand of products, services and promotional items.  The MONSTER Marks and

SGR/18504852.1

MONSTER Trade Dress are intellectual property assets of enormous value as symbols of Monster and its quality products, services, reputation, and goodwill.

**B.      Defendants' Infringing Activities**

37.     Defendants are engaged in the business of selling and repairing motorcycles and motorcycle parts and accessories.   Defendants also own and operate the websites <http://www.palmcoastmotorcyclerepair.com> and maintains the Facebook account <https://www.facebook.com/Monster-Motorcycles-Inc-160380780660191/>.

38.     Without permission or consent from Monster, Defendants have sold and are offering for sale goods and services using trademarks and trade dress that are confusingly similar to one or more of the MONSTER Marks and the MONSTER Trade Dress. Some examples of Defendants' goods and services displaying the infringing marks, including both the name "Monster Motorcycles" and the letter "M," are shown below:



29







SGR/18504852.1



## Bunnell, FL Motorcycle Repair

Monster Motorcycles Inc.

Monster Motorcycles Inc. sells and repairs motorcycles to the Bunnell, FL community. Our certified H-D technician has more than 25 years of experience. Visit our shop if you need new parts and accessories for your motorcycle!

**The Difference Starts Here. Business established in 2008.**



Learn More About Monster Motorcycles Inc.:

- We provide sales, service, repair, parts and accessories for motorcycles.
- From tune-ups to ground-ups
- Do it right the first time - the difference starts here.
- Licensed / insured
- All work guaranteed
- 24 hour emergency towing available.

Certified Harley-Davidson Technician.

**AUTHORIZED DEALER of:** Custom Chrome, Drag Specialties, Mustang, Bikers Choice Gardner Wescott, Tail Gunnerz Exhaust, Baker Drivetrain, Amsoil, Kuryakyn, Dynacycle, Spectro, Teds V-Twin, Bright Ass Lights, and Dyna Beads

Genuine H-D Oils and Filters are also in Stock.

**Contact Monster Motorcycles Inc. today at 386-446-4330.**

**Contact Information**



386-446-4330

Address / Get Directions



Monster Motorcycles Inc.
2 Enterprise Drive Suite C
Bunnell, FL 32110

**Hours of Business:**

Tuesday through Friday
9:00 am - 6:00 pm
Saturday
9:00 am - 2:00 pm
Sunday and Monday
Closed

**Methods of Payment:**

 

39.   As shown above, Defendants are using the mark MONSTER MOTORCYCLES and a stylized M by itself in green and black, which is confusingly similar to Monster's MONSTER Marks, on and in connection with t-shirts, hats, motorcycle sales, motorcycle repairs, and related goods.   On information and belief, Defendants are also using the MONSTER MOTORCYCLES and stylized M marks on clothing and stickers and decals to be

31

SGR/18504852.1

displayed on motorcycles and automobiles.  In addition, Defendants predominantly use their marks in a green and/or green and black font on a black background, which is confusingly similar to the MONSTER Trade Dress.  Defendants use a shade of green that is almost identical to the green used by Monster.

40.     Defendants were aware of Monster, the MONSTER Marks, and the MONSTER Trade Dress when Defendants commenced their infringing activities.

41.     Moreover, since at least November 2015, in a transparent attempt to create a false association between Defendants and Monster, and to sow confusion, Defendants have prominently displayed a neon sign bearing Monster's M-claw icon in their storefront as shown below:



SGR/18504852.1



42.     Without permission or consent from Monster, Defendants have infringed Monster's MONSTER Marks and MONSTER Trade Dress in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell products and services using the marks MONSTER MOTORCYCLES and a stylized M in green and black, which is confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress.

43.     Defendants' actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendants' products and services and are intended to cause consumers and potential customers to believe that Defendants' business and the goods that it offers are associated with Monster or Monster's MONSTER™ family of products or services, when they are not.

44.     Indeed, Defendants have a duty to avoid confusion with Monster, the MONSTER Marks and the MONSTER Trade Dress because Defendants entered

SGR/18504852.1

the market after Monster.   Nevertheless, Defendants have purposely sold, promoted, marketed, and/or distributed its products and services in a manner that causes a likelihood of confusion with Monster, the MONSTER Marks and the MONSTER Trade Dress.

45.    By virtue of the acts complained of herein, Defendants have created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and services and Defendants' products and services, and has otherwise competed unfairly with Monster by unlawfully trading on and using Monster's MONSTER Marks and MONSTER Trade Dress without Monster's permission or consent.

46.    Defendants' acts complained of herein are willful and deliberate and are clearly calculated to draw off of the name recognition and goodwill that Monster has created in motorsports.

47.    Defendants' acts complained of herein have caused damage to Monster and such damages will continue to increase unless Defendants are enjoined from their wrongful acts and infringement.

48.    Though monetary relief will partially compensate Monster, it will not make Monster whole.  Defendants' acts complained of herein have caused Monster to suffer irreparable injury to its business.  In particular, Monster's trademarks that

SGR/18504852.1

have been infringed by Defendants represent Monster's incalculably valuable goodwill and reputation.  Through their infringement, Defendants have deprived Monster of the ability to fully control that goodwill and reputation.  Because Monster cannot control what Defendants do with Monster's trademarks, Monster will suffer substantial loss of goodwill and reputation unless and until Defendants are enjoined from the wrongful acts complained of herein.

## IV.  FIRST CLAIM FOR RELIEF

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

49.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-48 of this Complaint as though fully set forth herein.

50.    This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

51.    As a result of the widespread use and promotion of Monster's MONSTER Marks and MONSTER Trade Dress, the marks and trade dress have acquired strong fame and secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the MONSTER Marks and MONSTER Trade Dress with Monster.

52.    Defendants have infringed the MONSTER Marks and MONSTER Trade Dress, and created a false designation of origin, by using in commerce,

35

SGR/18504852.1

without Monster's permission, the confusingly similar MONSTER MOTORCYCLES and stylized M marks in green and black in connection with the advertisement, offering for sale, and/or sale of Defendants' products and services, including clothing, hats, motorcycle sales, motorcycle repairs, and related goods.

53.    Defendants' actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendants, and/or as to the origin, sponsorship, or approval of Defendants' products and services or Defendants' commercial activities, in violation of 15 U.S.C. § 1125(a).

54.    Defendants' conduct was intended to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' products and services are associated with, sponsored by or approved by Monster, when they are not.

55.    Defendants had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and MONSTER Trade Dress, and without the consent of Monster, willfully violated 15 U.S.C. § 1125(a).

56.    Defendants, by their actions, have damaged Monster.

57.    Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and

SGR/18504852.1

permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

WHEREFORE, Monster prays the Court enter judgment against Defendants as follows:

A.    That the Court render a final judgment in favor of Monster and against Defendants for Monster's damages together with appropriate pre- and post-judgment interest and court costs;

B.    That Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

i.    using the mark MONSTER MOTORCYCLES or a stylized M in green and black in connection with the advertising, promotion, or sale of clothing, hats, motorcycle sales, motorcycle repairs, and related goods, using any of the MONSTER Marks or MONSTER Trade Dress, in connection with Defendants' products or services, using any of the MONSTER Marks or MONSTER Trade Dress in advertising or promoting Defendants' products or services, and/or using confusingly similar variations of any of the MONSTER Marks or MONSTER Trade Dress in any manner that is likely to create the

SGR/18504852.1

impression that Defendants' products or services originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

ii.    manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products or services bearing any of the MONSTER Marks, or MONSTER Trade Dress, and/or any confusingly similar marks or trade dress;

iii.    filing any applications for registration of any trademarks, trade dress, or designs confusingly similar to the MONSTER Marks or MONSTER Trade Dress;

iv.    otherwise infringing any of the MONSTER Marks or any of Monster's other trademarks, or Monster's MONSTER Trade Dress;

v.    falsely designating the origin of Defendants' products or services; and

C.    That Defendants be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116;

D.    That Defendants be required to account to Monster for all profits derived by Defendants by virtue of Defendant's acts complained of herein and to disgorge same;

SGR/18504852.1

E.      That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

F.      That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to 15 U.S.C. § 1117;

G.      That Defendants be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing the MONSTER MOTORCYCLES, stylized M in green and black, any of the MONSTER Marks, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118;

H.      That Monster be awarded restitution and disgorgement; and

I.      That Monster be awarded such other and further relief as this Court may deem just.

## V.  SECOND CLAIM FOR RELIEF

## (Trademark Infringement Under 15 U.S.C. § 1114)

58.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-48 of this Complaint as though fully set forth herein.

59.     This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

SGR/18504852.1

60.     Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks, including at least the registrations listed in paragraph 12 above.

61.     Defendants have used in commerce, without permission from Monster, colorable imitations, and/or confusingly similar marks to Monster's MONSTER Marks that are the subject of at least Monster's U.S. Trademark Registration Nos. 4,721,433; 4,721,432; 2,903,214; 4,051,650; 3,044,315; 3,057,061; 3,914,828; 3,923,683; 3,908,601; 3,908,600; 4,332,062; 4,660,598; 3,044,314; 3,134,842; 4,036,680; 4,036,681; 3,134,841; and 4,865,702    in connection with the advertising, marketing, and/or promoting of Defendants' products and services, including clothing, hats, motorcycle sales, motorcycle repairs, and related goods. Such use is likely to cause confusion or mistake, or to deceive.

62.     Defendants' activities constitute willful and intentional infringements of Monster's registered marks, and Defendants did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' products and services are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

SGR/18504852.1

63.     Defendants had actual knowledge of Monster's ownership and prior use of the MONSTER Marks, and has willfully violated 15 U.S.C. § 1114.

64.     Defendants, by their actions, have damaged Monster.

65.     Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

WHEREFORE, Monster prays this Court enter judgment against Defendants as follows:

A.     That the Court render a final judgment in favor of Monster and against Defendants for Monster's damages together with appropriate pre- and post-judgment interest and court costs;

B.     That Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

i.     using the mark MONSTER MOTORCYCLES or a stylized M in green and black in connection with the advertising, promotion, or sale of clothing, hats, motorcycle sales, motorcycle repairs, and related goods, using any of the MONSTER Marks or MONSTER Trade Dress, in connection with

SGR/18504852.1

Defendants' products or services, using any of the MONSTER Marks or MONSTER Trade Dress in advertising or promoting Defendants' products or services, and/or using confusingly similar variations of any of the MONSTER Marks or MONSTER Trade Dress in any manner that is likely to create the impression that Defendants' products or services originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

      ii.    manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products or services bearing any of the MONSTER Marks, or MONSTER Trade Dress, and/or any confusingly similar marks or trade dress;

      iii.    filing any applications for registration of any trademarks, trade dress, or designs confusingly similar to the MONSTER Marks or MONSTER Trade Dress;

      iv.    otherwise infringing any of the MONSTER Marks or any of Monster's other trademarks, or Monster's MONSTER Trade Dress; and

      v.    falsely designating the origin of Defendants' products or services.

    C.    That Defendants be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in

SGR/18504852.1

writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116.

      D.    That Defendants be required to account to Monster for and to disgorge all profits derived by Defendants by virtue of Defendant's acts complained of herein;

      E.    That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

      F.    That an award of reasonable costs, expenses, and attorneys' fees be awarded to Monster pursuant to 15 U.S.C. § 1117;

      G.    That Defendants be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing the MONSTER MOTORCYCLES, stylized M in green and black, any of the MONSTER Marks, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118;

      H.    That Monster be awarded restitution and disgorgement; and

      I.    That Monster be awarded such other and further relief as this Court may deem just.

SGR/18504852.1

## VI.  <u>THIRD CLAIM FOR RELIEF</u>

## (Unfair Competition Under Florida Statute § 501.201 *et seq*.)

66.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-48 of this Complaint as though fully set forth herein.

67.    This is an action for unfair and deceptive trade practices, and more particularly, unfair competition under Fla. Stat. § 501.201, *et seq.*

68.    By virtue of the acts complained of herein, Monster Motorcycles has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Florida Statute § 501.201, *et seq*.

69.    Monster Motorcycles' acts complained of herein constitute trademark infringement, trade dress infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Monster, all of which are deceptive and unfair trade practices in violation of Chapter 501, Florida Statutes.

70.    Monster Motorcycles, by its actions, has damaged Monster.

71.    Monster Motorcycles, by its actions, has irreparably injured Monster. Such irreparable injury will continue unless Monster Motorcycles is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

SGR/18504852.1

WHEREFORE, Monster prays this Court enter judgment against Monster Motorcycles as follows:

A.    That the Court render a final judgment in favor of Monster and against Monster Motorcycles for Monster's damages together with appropriate pre- and post-judgment interest and court costs;

B.    That Monster be awarded its reasonable attorneys' fees against Defendants in accord with Section 501, 2015 Florida Statutes;

C.    That Monster be awarded restitution and disgorgement; and

D.    That Monster be awarded such other and further relief as this Court may deem just.

## VII.  FOURTH CLAIM FOR RELIEF

### (Florida Common Law Unfair Competition)

72.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-48 of this Complaint as though fully set forth herein.

73.    This is an action for unfair competition under the common law of Florida.

74.    Defendants' acts complained of herein constitute trademark infringement and unfair competition under the common law of Florida.

75.    By virtue of the acts complained of herein, Defendants have willfully and intentionally caused a likelihood of confusion among the purchasing public in

this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of Florida.

76.    Defendants' aforementioned acts have damaged Monster.

77.    Defendants have irreparably injured Monster. Such irreparable injury will continue unless Defendant are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

78.    Defendants' willful acts have been made intentionally and/or in reckless disregard for the rights of others. Accordingly, Monster is entitled to punitive damages.

WHEREFORE, Monster demands judgment against Defendants:

1.    for Monster's damages together with appropriate pre- and post-judgment interest and court costs and punitive damages.

Dated:    May 31, 2018

Respectfully submitted,

Steven J. Nataupsky
*(pro hac vice pending)*
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes
*(pro hac vice pending)*
lynda.zadrasymes@knobbe.com
Paul A. Stewart  *(pro hac vice pending)*
paul.stewart@knobbe.com
KNOBBE, MARTENS, OLSON
& BEAR, LLP

SGR/18504852.1

2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

Hans L. Mayer (*pro hac vice pending)*
hans.mayer@knobbe.com
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Phone: (310)551-3450

and

Alan S. Wachs
Florida Bar No. 980160
awachs@sgrlaw.com;
tgreene@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL 32202 USA
Phone: (904) 598-6100

*Attorneys for Plaintiff,*
*Monster Energy Company*

SGR/18504852.1